UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SARA HINES,

                              Plaintiff,           5:24-cv-071
                                                        (ECC/ML)
v.

DEPARTMENT OF SOCIAL SERVICES
CAYUGA COUNTY, *et al.*,

                              Defendants.
_____

Sara Hines, *Pro Se Plaintiff*
James A. Long, Esq., *for Defendants*

**Hon. Elizabeth C. Coombe, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

On January 16, 2024, Plaintiff Sara Hines, proceeding pro se, initiated this action against the named Defendants for violating her constitutional rights in connection with a criminal prosecution stemming from an alleged overpayment of childcare benefits. Complaint (Compl.), Dkt. No. 1. The Court subsequently reviewed the Complaint, and dismissed some claims for lack of subject matter jurisdiction and on the basis of absolute immunity. Dkt. Nos. 10, 11. Currently pending before the Court is Defendants' motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 37. The motion is fully briefed. Dkt. Nos. 40, 41. For the following reasons, Defendants' motion is granted in part and denied in part.

I.   **FACTS**[1]

On March 9, 2022, Plaintiff attended a conference with the Defendant Department of Social Services (DSS) in Auburn, New York, "regarding the discontinuance of day care services." Compl. at 12. In addition to Plaintiff's mother and daughter, Defendants DSS senior investigator Amanda Hare, DSS caseworker Lindsey Nuccilly, and DSS Supervisor Jeanette Murray also attended the conference. *Id.*

On June 13, 2022, Plaintiff received a notice from DSS stating that from August 21, 2019 through February 28, 2022, she received an overpayment of childcare benefits in the amount of $26,983.14. Compl. at 12.

On June 14, 2022, Defendant Hare filed a felony complaint with the Cayuga County District Attorney's Office against the Plaintiff, and on July 27, 2022, Auburn Police Department arrested Plaintiff on one count of Grand Larceny in the Third Degree, one count of Welfare Fraud in the Third Degree, and six counts of Offering a False Instrument for Filing in the First Degree. Compl. at 12. Plaintiff was arraigned in Auburn City Court on August 12, 2022. *Id.* at 13. During the arraignment, Plaintiff "immediately notified" the court and district attorney's office that Plaintiff did not receive a fair hearing "in accordance with the Administrative Procedure and rules governing the Fair Hearing Procedures." *Id.* at 16.

Plaintiff was given a "partial Fair Hearing" conducted by the Office of Temporary and Disability Assistance via telephone on November 4, 2022, which was adjourned to a later date "due to the lack of and wrong evidence submitted . . . by [Defendants] Amanda Hare, Lindsey

---

[1] These facts are drawn from the Complaint and the exhibits attached thereto. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true any legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Nuccilly, and Jeannette Murry." Compl. at 13. During the hearing, the administrative judge "became aware of the fact that . . . Hare, Nuccilly, and Murray had already filed charges against the Plaintiff," before a final fair hearing was conducted. *Id.*

On November 7, 2022, Plaintiff filed a motion seeking dismissal of her criminal case due to violations of her constitutional rights to due process. Compl. at 16. On November 30, 2022, Plaintiff was called before a Cayuga County grand jury and indicted on all charges. *Id*. at 13. Defendant Hare gave sworn testimony during the grand jury presentment. *Id.* Between the time of her arraignment and the grand jury convening, Plaintiff "had not been afforded . . . a Preliminary Hearing[.]" *Id.* at 16. The court "allowed [Plaintiff's criminal case] to linger . . . for approximately 100 days." *Id.*

On December 29, 2022, Plaintiff filed a motion seeking dismissal of the case before the Office of Temporary and Disability Assistance due to violations of "Departmental Procedures." Compl. at 14. DSS did not respond to the motion. *Id.* "[P]laintiff was found not guilty of any overpayment by the Department of Social Services and Temporary Disability on July 28, 2023." *Id*. at 19.

In November 2023, Plaintiff "furnished the court and district attorney's office" with the Decision After Fair Hearing issued by the Office of Temporary Disability. The Decision reversed the SSA's determination that Plaintiff received an overpayment for childcare benefits, and directed the SSA to withdraw the November 13, 2022 notice and take no further action. Compl. at 19. Despite the findings of the Office of Temporary Disability, the court and Defendant Antonacci "blatantly disregarded these facts as [Defendant] Antonacci proceeded in hopes of a guilty verdict . . . [and Plaintiff was sentenced] to an Adjournment in Contemplation of Dismissal." *Id.* at 19-20.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

### A. Cayuga County District Attorney's Office

Defendants move to dismiss the Complaint as against Cayuga County District Attorney's Office. Defendant's Memorandum of Law (Def.'s MOL) at 6-7. The Complaint has already been dismissed as against this defendant pursuant to U.S. District Court Judge Mae A. D'Agostino's June 20, 2024 Memorandum-Decision and Order, because it is "not an entity subject to suit under 42 U.S.C. § 1983." Dkt. No. 11 at 5 (citing *Michels v. Greenwood Lake Police Dep't*, 387 F. Supp. 2d 361, 367 (S.D.N.Y. 2005). Thus, for the reasons previously set forth by the Court, the Clerk of the Court is respectfully directed to terminate the Cayuga County District Attorney's Office as a defendant in this matter as of June 20, 2024.

### B. Prosecutorial Immunity

"[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Only those acting "without any colorable claim of authority" are denied absolute immunity. *See Bernard v. County of Suffolk*, 356 F.3d 495, 504 (2d Cir. 2004) (quoting *Schloss v. Bouse*, 876 F.2d 287, 291 (2d Cir. 1989)). The immunity covers "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)). "The Supreme Court has explained that a prosecutor's functions preliminary to the initiation of proceedings include 'whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present.'" *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler*, 424 U.S. at 431 n. 33).

Alternatively, absolute immunity does not cover "a prosecutor's acts of investigation or administration," *see Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994), which are "protected only by qualified, rather than absolute, immunity," *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997); *see also Bernard*, 356 F.3d at 502 ("[O]nly qualified immunity applies to law enforcement officials, including prosecutors, when they perform investigative functions." (quoting *Imbler*, 424 U.S. at 430)). Courts apply a "functional approach" to claims of absolute immunity, focusing on "the nature of the function performed." *Bernard*, 356 F.3d at 503 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). The "official who asserts absolute immunity from § 1983 shoulders the burden of establishing the existence of immunity for the function in question." *Hill*, 45 F.3d at 661.

Liberally construed, the alleged actionable conduct of the Defendant-prosecutors Antonacci, Pado, and Azzarelli is confined to the scope of their duties in prosecuting a criminal case against Plaintiff. Specifically, Plaintiff complains that these Defendants allowed her case to "linger . . . for approximately 100 days," despite their knowledge that she did not receive a fair hearing at the administrative level with respect to the conduct giving rise to the criminal charges. Plaintiff also complains that Defendant Antonacci "blatantly disregarded" the administrative judge's decision after the fair hearing reversing DSS's determination, and continued to prosecute the case "in hopes of a guilty verdict[.]" Even assuming the truth of these allegations, the Second Circuit has made clear that "if the charging decision or other act is within the prosecutor's jurisdiction as a judicial officer, then absolute immunity attaches to their actions 'regardless of any allegations' that their 'actions were undertaken with an improper state of mind or improper motive.'" *Anilao v. Spota*, 27 F.4th 855, 865 (2d Cir. 2022) (quoting *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005). This includes allegations of baseless prosecutions lacking probable cause. *See Bernard*, 356 F.3d at 497-98 (county prosecutors entitled to absolute immunity for their politically motivated prosecution of plaintiffs without probable cause, which included knowingly presenting false evidence to, and withholding exculpatory evidence from, the grand jury); *Shmueli*, 424 F.3d at 233 (absolute immunity applied to protect local prosecutors who prosecuted plaintiff "despite knowing that the charges against her were false and that [she] was innocent" of those charges); *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1148 (2d Cir. 1995) (granting absolute immunity to prosecutors who improperly sought to increase plaintiff's bail; made false representations to prompt a plea agreement which they later breached; manufactured a

bail jumping charge; lied to the Bureau of Prisons; and unnecessarily transferred plaintiff from county to state jail).

The Second Circuit has made clear that "jurisdiction" to prosecute "depend[s] on the authority conferred by the New York statutes" to prosecute the underlying crime. *Shmueli*, 424 F.3d at 238. In this case, there is no meaningful argument that the Defendant-prosecutors lacked jurisdiction over the offense – i.e. authorization by statute to prosecute the underlying crimes. Thus, even accepting the allegation that the Defendant-prosecutors trampled Plaintiff's rights in the course of prosecuting the underlying crimes, because the events described by Plaintiff "consist[ ] only of the prosecution" of Plaintiff "in a court of competent jurisdiction on charges that were within the [prosecutors'] authority to bring," the prosecutors "are entitled to absolute immunity against" Plaintiff's "claims for damages[.]" *Id.* at 239. Defendant's motion to dismiss the Complaint is therefore granted as to Defendants Antonacci, Pado, Azzarelli.

### C.    Administrative Procedure Act

Defendants move to dismiss Plaintiff's Complaint for failure to state a claim for violation of the Administrative Procedure Act. Def.'s MOL at 3-6. The first cause of action listed in the Complaint is "Violation of Administrative Procedure" against Defendants Hare, Nuccilly, and Murray. Compl. at 12. Plaintiff alleges that these Defendants' conduct violated "the Administrative Rules and Regulation governing both [DSS] and the plaintiff," and "put the plaintiffs [sic] life, liberty and property in jeopardy without due process of law." *Id.* at 14.

To the extent Plaintiff's Complaint can be construed to state a claim for a violation of the Administrative Procedure Act, the Court agrees that dismissal is warranted. Pursuant to the APA, "[a] person suffering legal wrong because of agency action . . . is entitled to judicial review thereof." 5 U.S.C. § 702. "Agency" is defined as "each authority of the Government of the United States[.]" 5 U.S.C. § 701(b)(1). Here, Plaintiff is not suing the federal government, but the DSS,

a local agency, and its employees. In the absence of any allegation that these Defendants can be seen as taking on federal agency status, Plaintiff cannot maintain a cause of action for violations of the APA against them. *See Boyd v. Albany Cnty. Dep't of Soc. Servs.*, No. 1:14-cv-1386 (LEK/RFT), 2015 WL 3447608, at *7 (N.D.N.Y. May 28, 2015) (dismissing plaintiff's claims brought pursuant to the APA because the defendant department of social services was not a federal agency); *Dan v. New York*, No. 1:24-cv-1233 (MAD/PJE), 2025 WL 2046169, at *4 n. 7 (N.D.N.Y. July 22, 2025) ("[T]he Administrative Procedure Act is only applicable to federal agencies."); *Anderson v. State Univ. of New York*, No. 24-cv-2083, 2024 WL 3656551, at *3 (S.D.N.Y. July 29, 2024) ("Because Plaintiff does not sue the federal government, and because his claims do not implicate a final federal agency action, the allegations in the complaint cannot be reviewed under the APA.").

Plaintiff's first cause of action could, however, be liberally construed to allege a Fourteenth Amendment due process claim against Defendants Hare, Nuccilly, and Murray. Accordingly, the Court will incorporate these allegations into the following analysis concerning Plaintiff's due process claims.

### D. Fourteenth Amendment Due Process

Defendants move to dismiss Plaintiff's Fourteenth Amendment due process claims due to prosecutorial immunity and failure to allege the deprivation of a liberty or property interest. Def.'s MOL at 7. As previously discussed, the Court agrees that the Defendant-prosecutors are entitled to absolute immunity from Plaintiff's Section 1983 claims as alleged.

Liberally construed, the Complaint alleges that Defendants Hare, Nuccilly, and Murry violated Plaintiff's Fourteenth Amendment due process rights by filing the felony complaint against Plaintiff before a final fair hearing had been conducted at the administrative level. Compl. at 13. To successfully state a procedural due process claim under Section 1983, a plaintiff must

8

establish both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process. *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) (citing *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)). Public assistance benefits "have long been afforded constitutional protection as a species of property protected by the federal Due Process Clause." *Kapps v. Wing*, 404 F.3d 105, 112 (2d Cir. 2005) (quoting *Goldberg v. Kelly*, 397 U.S. 254, 262 & n.8 (1970)); *see also M.K.B. v. Eggleston*, 445 F. Supp. 2d 400, 432 (S.D.N.Y. 2006) ("Persons who are qualified to receive welfare benefits have a legitimate claim of entitlement to such benefits.").

The fundamental requirements of due process are notice and an opportunity to be heard in a meaningful time and a meaningful manner. *Davis*, 2 F. Supp. 3d at 485 (citing, among others, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)). Notice of benefit determinations must provide claimants with enough information to understand the reasons for the agency's action, so that they may defend the impending termination. *Id*. (citing, among others, *Kapps v. Wing*, 404 F.3d 105, 123-24 (2d Cir. 2005)). Under New York law, access to a fair hearing pursuant to N.Y. Soc. Serv. Law § 22 and 18 N.Y.C.R.R. § 358, and the availability of further review in the state courts in an Article 78 proceeding have been found to be constitutionally adequate post-deprivation procedures to challenge adverse determinations in connection with government entitlement programs. *See Banks v. HRA*, 11-cv-2380, 2013 WL 142374, at *3 (E.D.N.Y. Jan. 11, 2013); *Vapne v. Eggleston*, 04-cv-0565, 2004 WL 2754673, at *5 (S.D.N.Y. Dec. 1, 2004). However, as the Second Circuit recently reiterated, "the Due Process Clause requires more than going through the motions—the process must be provided 'at a meaningful time and in a meaningful manner.'" *Walker v. Bellnier*, ___ F.4th ___, No. 21-650, 2025 WL 2088314, at *18

(2d Cir. July 25, 2025) (quoting *Proctor v. LeClaire*, 846 F.3d 597, 609 (2d Cir. 2017)) (in turn quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965))).

Although it is undisputed here that Plaintiff eventually received a final fair hearing resulting in the reversal of DSS's determination of overpayment, Plaintiff alleges that the hearing did not occur until after she had been arrested and indicted based on the named Defendants' representations stemming from the initial determination of overpayment. Thus, to the extent Plaintiff's Complaint can be construed to allege that the process she received was not "meaningful," and in consideration of Plaintiff's pro se status, Plaintiff's allegations of due process violations as against Defendants Hare, Nuccilly, and Murray are sufficient to overcome Defendant's motion to dismiss for failure to state a claim.

### E. Conspiracy

Defendants argue that Plaintiff's Section 1983 conspiracy claim is "vague, conclusory, and does not contain specific allegations[,]" and is therefore subject to dismissal. Compl. at 10. In order to survive a motion to dismiss on a § 1983 conspiracy claim, plaintiff must allege "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). "'[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.'" *Ciambriello v. County of Nassau,* 292 F.3d 307, 325 (2d Cir. 2002) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)).

Here, even construing all inferences in Plaintiff's favor, the Complaint fails to plausibly allege a conspiracy. Plaintiff alleges that due to their professional experience, Defendants Hare,

10

Nuccilly, and Murry "knew or should have known" that filing the felony complaint before a final fair hearing took place was a violation of Plaintiff's rights. Compl. at 17. Plaintiff further alleges that Defendants Antonacci, Pado, and Azzarelli "knew or should have known that proceeding to prosecute" Plaintiff without a final fair hearing determination was a violation of Plaintiff's rights. *Id.* These allegations do not suffice to support a plausible claim that the Defendants acted in concert or had an agreement to violate Plaintiff's constitutional rights. *See Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) (to maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds . . ."). Furthermore, Defendants Antonacci, Pago, and Azarelli are immune from suit by virtue of their prosecutorial immunity. Accordingly, Defendants' motion to dismiss Plaintiff's Section 1983 conspiracy claims is granted.

F.     **Department of Social Services Cayuga County/Official Capacity Claims**

Defendants argue that Plaintiff has failed to state a claim against DSS because she has not identified a county custom or policy that caused her injury. Def.'s MOL at 6-12. "Under New York law, departments that are merely administrative arms of a municipality have no separate legal identity apart from the municipality and therefore cannot be sued." *Mulvihill v. N.Y.*, 956 F. Supp. 2d 425, 428 (W.D.N.Y. July 29, 2013) (cleaned up) (quoting *Omnipoint Comm'ns, Inc. v. Town of LaGrange*, 658 F.Supp.2d 539, 552 (S.D.N.Y. 2009)). Here, the Court construes Plaintiff's claim to be asserted against the appropriate entity, Cayuga County. *See Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't*, 557 F. Supp. 2d 408, 416, n.4 (S.D.N.Y. 2008) ("The Department of Corrections Medical Department is a County agency, so the proper party [d]efendant is Westchester County.").

A municipality such as Cayuga County "can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing

11

*Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978)). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis for the tort of its employee." *Id.* Here, liberally construing Plaintiff's Complaint, there is no allegation of a policy or custom sufficient to withstand Defendants' motion to dismiss. Rather, the Complaint contains allegations concerning the individual Defendants' conduct relative to Plaintiff's specific circumstances.

Moreover, "[c]laims against a government employee in his [or her] official capacity [are] treated as a claim against the municipality[.]" *Guarneri v. Schoharie Cnty. Dep't of Soc. Serv.*, No. 1:21-cv-0991 (TJM/ML), 2021 WL 6050305, at *7 (N.D.N.Y. Dec. 21, 2021) (citations omitted). Accordingly, due to Plaintiff's failure to allege a *Monell* claim, any purported claims against DSS, Cayuga County, and/or employees of DSS in their official capacities must be dismissed. *See Schweitzer v. Crofton*, 935 F. Supp. 2d 527, 551 (E.D.N.Y. 2013) ("[The p]laintiffs' claim against the Suffolk County Department of Social Services must be dismissed because it is not a suable entity."), *aff'd*, 560 F. App'x 6 (2d Cir. 2014); *Trombley v. O'Neill*, 929 F. Supp. 2d 81, 101 (N.D.N.Y. 2013) ("[The p]laintiff has failed to allege the existence of any policy, custom, or failure to train, as a basis for his § 1983 claims. Accordingly, because [the p]laintiff has failed to state a basis for the liability of Essex County on any of his claims, all claims against [the d]efendants in their official capacities must be dismissed.").

## IV.   LEAVE TO AMEND

Under Federal Rule of Civil Procedure 15(a)(2) a court should freely give leave to amend "when justice so requires." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Under Rule 15(a), absent certain circumstances not at play here, a party may amend its pleading only with the opposing party's written consent or the court's leave. *See* Fed. R. Civ. P. 15(a)(1)–(2). A court may, in its discretion, deny leave to amend "for good reason, including

12

futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023).

Here, Plaintiff's APA claims should be dismissed with prejudice and without leave to amend, because any proposed amendment under the relevant circumstances would be futile. The Complaint should also be dismissed with prejudice and without leave to amend against Defendants Pado, Antonacci, and Azzarelli based on their prosecutorial immunity. Plaintiff's Fourteenth Amendment due process claims against Defendants Hare, Nuccilly, and Murray in their individual capacities survive Defendants' motion to dismiss and will proceed to litigation. As to the remainder of Plaintiff's claims, out of deference to Plaintiff's pro se status, and because it is possible that Plaintiff may be able to assert cognizable claims with better pleading, the Court grants Plaintiff leave to file an amended complaint within thirty (30) days of the date of this Order.[2]

## V.  CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss, Dkt. No. 37, is **GRANTED** in part and **DENIED** in part, and it is further

**ORDERED** that Defendants' motion to dismiss Plaintiff's APA violation claims is **GRANTED**, and those claims are **DISMISSED WITH PREJUDICE**, and it is further

**ORDERED** that Defendants' motion to dismiss Plaintiff's 42 U.S.C § 1983 claims (due process, conspiracy, and malicious prosecution) against Defendants Brittany Antonacci, Richard

---

[2] Plaintiff's Complaint asserts Fourth Amendment malicious prosecution claims against Defendants Antonacci, Pado, and Azzarelli. Compl. at 18. As discussed, these claims are subject to dismissal by virtue of these Defendants' prosecutorial immunity. The Complaint does not specifically articulate a claim for malicious prosecution against Defendant Hare, and the Court does not recognize such a claim to be asserted at this juncture. If Plaintiff intends to allege a Fourth Amendment malicious prosecution claim against Defendant Hare, such claim should be specifically articulated in any amended complaint filed.

Pado, and Susan Azzarelli is **GRANTED**, and those claims are **DISMISSED WITH PREJUDICE** due to these Defendants' prosecutorial immunity, and it is further

**ORDERED** that Defendants' motion to dismiss Plaintiff's conspiracy claims pursuant to 42 U.S.C. § 1983 against Defendants Hare, Nuccilly, and Murray is **GRANTED**, and those claims are **DISMISSED WITHOUT PREJUDICE**, and it is further

**ORDERED** that Defendants' motion to dismiss is **GRANTED** as to Plaintiff's 42 U.S.C § 1983 claims against Defendant Cayuga County Department of Social Services, and those claims are **DISMISSED WITH PREJUDICE** as to the named Defendant DSS**,** but **WITHOUT PREJUDICE** as to Cayuga County, and it is further

**ORDERED** that Defendants' motion to dismiss is **GRANTED** as to Plaintiff's official-capacity claims against Defendants Hare, Nucilly, and Murray, and those claims are **DISMISSED WITHOUT PREJUDICE**, and it is further

**ORDERED** that the Defendants' motion to dismiss is otherwise **DENIED**, specifically in that Plaintiff's Fourteenth Amendment due process claim pursuant to 42 U.S.C. 1983 against Defendants Hare, Nuccilly, and Murray in their individual capacities survives Defendants' motion to dismiss, and it is further

**ORDERED** that Plaintiff is granted leave to file an amended complaint in accordance with the above decision within thirty (30) days of the date of this Order, and it is further

**ORDERED** that if Plaintiff does not file an amended complaint within thirty (30) days of the date of this Order, this case will proceed on the basis of the original Complaint as modified by this Memorandum-Decision and Order.

    **IT IS SO ORDERED.**

Dated: August 12, 2025

Elizabeth C. Coombe
U.S. District Judge